Good morning, Your Honors. May it please the Court, Colleen Flynn for Plaintiff's Appellants, Marguerite Hiken and the Military Law Task Force. I would like to reserve four minutes for rebuttal. Counts down. Keep track. Oh, fantastic. Thank you. I would like to begin by explaining the ways in which the District Court here abused its discretion. Under the clear precedent of this Court, the District Court abused its discretion by setting rates that were below the prevailing market rate. The problem here is that if you look at the underlying motion papers, and help me, if you will, understand what went on, it appears to me that you went in and rolled the dice. You asked for the maximum amount you thought you could get, which was basically a rate calculated on everybody's latest earnings fee. I'm sorry, latest billing rate. You didn't argue, as I see it, for anything else. The government, on the other hand, essentially said you aren't entitled to anything. Then the judge decided that your approach was wrong, but you hadn't given him any fallback position, so he made a calculation that you're here now challenging. Well, it is true that we asked for rates at current market rates. We nevertheless met our evidentiary burden of submitting evidence of historical rates. What the District Court did . . . The District Court then, under your theory, was obligated to parse through the rather substantial body of documentation and recalculate the rates? Under the precedent of this Court, in cases such as Widrig, Fisher, Barjan, when a request for attorney's fees is deemed to be excessive, this Court, the Ninth Circuit, has always sent it back to the District Court to recalculate at prevailing market rates. There is no authority for the proposition that if you ask for his assessment, it's not going to be granted, and instead you should be awarded at historical rates, that the judge is then therefore allowed to ignore the evidence of the record of those prevailing market rates, historical rates, and set below market rates. What evidence was there in the record of the historical rates? For example, the year 2012, which was the last year of the litigation, those rates were both . . . which is what we asked for . . . How can that be? Because we asked for time in 2012. We were awarded over 60 hours for our time in 2012, and we made the fee motion in 2012. So in that sense, those were historical rates. But they weren't historical for the previous years that were at issue. That is correct. But the Court ignored that evidence of what our rates should be for 2012. He awarded us time, substantial time. Why didn't he look at that as your argument regarding the prevailing rates rather than evidence of historical rates? Yes. And that was error, because we had time in the case, awarded to us in 2012. We made the fee award in 2012. So then that would be . . . What case says that if you present evidence of prevailing rates, current prevailing rates, that the Court has to look at that as a historical rate as well? What's your strongest case that says that? The strongest case would be the Moser case, where you need to . . . the district court needs to afford the rates proffered by the attorneys a presumption of reasonableness. We proffered rates for 2012 for work done in 2012. But that doesn't help you for the previous years. If you wanted to . . . the Court wanted rates for the 2008, 2009, I think, years 2010, 2011. So for those years, that doesn't help you to make that argument that the Court has to consider the evidence of prevailing rates. The district court was of the view that it was inappropriate for you to request prevailing rates at the current time for the work that was done years previously, and no evidence was presented regarding that time period. So he made the decision as to what the historical rates were for that. And I'm curious as to, you know, what case says that he abused his discretion in that regard. Okay. So you are correct in that the rates that we proffered for 2012 are only helpful for 2012. But then we also proffered evidence of . . . evidence in previous years. For example, in 2009, I was awarded rates in a civil rights case in Los Angeles, and we pointed to that in the record. And that was in your declaration? That was absolutely in my declaration. Chris Ford, co-counsel on the case, was awarded rates in the same case in 2009. That was in his declaration. I believe it was in my declaration as well. It was also referenced in Carol Sobel's declaration. So those 2009 rates were in the declarations, in the evidence, submitted before the district court, and completely ignored by him. But help me understand this. As I look at the relevant case law, you weren't entitled perhaps to historical rates, but you weren't entitled to be paid for all the historical time at your current rate. Correct. But you argued for it. Correct. Why? It seems to me you made an argument to the lower court that was just demonstrably inconsistent with prevailing law. And now you're asking us to bail you out of that. So the EPIC decision out of the D.C. Circuit, which the district court used the correct standard, that typically in cases where the federal government is the defendant, you use historical rates. However, two pages later, in that same EPIC decision, it says that you can have an upward adjustment, and that parties may be entitled to an upward adjustment in cases where the litigation is incredibly protracted and there's a long delay in the payment of fees. But that's within the discretion of the court. Absolutely. Yes. Do not disagree with that. So let me understand your response then. So your response is that you were not making an argument that was unsupported by law. You're making an argument that was within the discretion of the judge to agree with or not to agree with. Correct. Even if we agree with that argument, which I'm not necessarily saying I do, how did the district court abuse its discretion at that point? So at that point, when the district court, completely within his discretion, said, I'm not going to give you the upward adjustment. Instead, I'm going to give you historical rates. Where he erred was by not looking at the evidence in the record, which we proffered, and then relying on the evidence. Was that pointed out to him? Did you argue, we have evidence of historical rates in the record. Did you argue that to the district court? In the papers or in the hearing? In the papers, no. We just asked for the, we pointed to the evidence in the record. We discussed, look, this is what we think our rate is for 2012. This is what we got back in 2009. Co-counsel, Attorney Kalb, had a fee award in 2000 and I believe 2005. You were pointing to those to justify the current rates that you were asking for. Yes. Yes. But that is part of your argument, that historically, here are the rates that you should consider for those previous years. Exactly. Right. Yes. So that evidence was in the record. We pointed to that. And then just You said you pointed to it. There was no oral argument on this. There was not, no. So it was, that was in the papers. And I could point to that. But not in the way you're doing it today. You're not, in your papers, you didn't say, we're entitled to this rate for these years because that's, in 2009, here's the rate we got. And for 2009, here's the rate we're requesting. That wasn't the way it was couched to the district. No. It was, this is the rates that we think are reasonable for 2012 and here's the history of our And we want this rate for all of the work we've done. That was the request. That was the argument. Yes. So it was kind of a roll the dice, let's max out in our request and hope we're successful. We believed we were entitled to that amount based on the history of the litigation in this case, which was incredibly protracted in great deal on part of the fault of the federal government and the way they litigated this case. The judge sent them back to do a new search because their search was inconclusive. It's pretty clear from the record the government didn't want to give you any of these documents. So I would like to also address how the district court abused its discretion by the cases it relied on in setting those $200 an hour rates. It relied on Blackwell and Blackwell actually stands for the proposition that $200 an hour is below market rate. In that case, the court awarded $200 an hour because that was all that was requested. Okay. Here's a question I've got. It does seem to me that the district judge, not the most recent iteration, but the district judge that actually awarded you the fees based on $200 an hour, that's a crazy rate to give for all of the work performed when that rate comes out, not any evidence that you put in front of the judge, but out of independent cases with lawyers who are not you and whatever, when you've got some work that was performed in 2012 rather than 2008. I mean, a flat $200 rate across the entire thing seems to me just wrong. On the other hand, what are we supposed to do with the fact that you asked for something that you weren't entitled to get, or at least the judge was perfectly permitted in saying you weren't entitled to get, and you didn't really run through saying, okay, if you disagree with us, and we really are going to have to do historical rates, let me lay out for you, here's what the rate should have been in 2008, here's what it should have been in 2009. You didn't do that. Now, the judge could probably have pieced it together by looking at your declarations and looking at the declarations of particularly Sobel and Burke, but you didn't lay it out for them that way. What do we do if we think the judge was just flat wrong in giving you $200? Are we supposed to then do or allow the magistrate judge to do, okay, well, the judge was wrong, abused his discretion, and I'm going to go back and do what you didn't really ask the district judge to do, but I'm going to go back and do the best I can? That's what the magistrate judge did, of course, but then when it comes up to Judge Rogers, he says, uh-uh, sorry, you rolled the dice, and you just didn't give enough information in the form in which the judge was required to look at it. What do we do with Judge Rogers' decision? Judge Rogers' decision was also erroneous, and the cases that she relied on are in opposite to our situation. She relied on Patton Boggs, where the appellants there wanted to switch the form of the law which controlled in their motion for reconsideration, and also on the Morrow decision, where they wanted to introduce new evidence, new affidavits that weren't previously before the court. We are not, in our Rule 59e motion, did none of the above. What we did is we said, okay, that's, you know, the judge wanted to set the rates at historical rates, that's completely within his discretion, no problem. What we're trying to do in that motion is point out to the court, look, you overlooked the evidence of what those historical rates should be. We proffered that evidence, we met our evidentiary burden. But you were on a 59e motion at that point. Yes. And so what's your best case to support your argument that she erred under Rule 59e? So, because that's a different standard. Yes, that's clear error. And it's clear error to ignore evidence in the record. So all we were saying is, look, no problem, you say that we should get historical rates, you don't want to give us the upward adjustment, no problem. But we met our evidentiary burden. We put those historical rates in the record. And so all we're doing in that motion is pointing to them and then letting the judge know, look, it's an abuse of discretion to ignore that evidence that we proffered. Okay. We've taken you down to a little under two minutes. Shall we hear from the other side? Sure. Okay. Sounds good. Thank you. When you come back, would you be prepared to address the specific standard of Rule 59e, manifest injustice? Sure. All right. Thank you. May it please the Court, Jerry Synstack, appearing on behalf of the United States. The District Court did not abuse its discretion, either in denying the Rule 59e motion or in Judge Ware's initial award of close to $200,000 in fees. Plaintiffs here, as Judge Parker pointed out, chose to roll the dice. They presented the District Court with a single option. They asked for all of their hours to be awarded at their then-current 2012 rates. They provided no request for historical rates. They provided no attempt to justify those rates. You said they provided no — They did not request historical rates in their initial motions. You know, they did not perform any analysis of historical rates or point the District Court to that analysis or to any analysis, nor even identify the historical rates for the four attorneys who worked on this case. All right. So you would — would the government concede that these plaintiffs are entitled to some fee? Yes. They're entitled to some fee, as under this Court's case law and law. All right. And so would the government concede that they're entitled to a properly calculated fee? They're entitled to a reasonably calculated fee. So if the fee was improperly calculated, what's the government's objection to simply asking the lower court to correctly calculate the fee? You know, after all, the — in these fee-shifting cases, the responsibility for fixing an accurate fee is with the judge. Your Honor, the judge in this case did not fix an inaccurate fee. The Justice of the Court — Of course he did. He did not, Your Honor. The judge — All right. Well, if that's your argument — Well, I'd just like to — I guess take a step back here. It's going to be a long morning for you. The District Court in this case awarded $200 an hour, as Your Honors know. That was based on the 2000 to 2006 to 2008 rate, which was based on case law from that time period, and that was also the time period when 80 percent of the work was done in this case. The cases the District Court cited were representative of other cases from that time period, which the government cited, as well as other methods, all of which we pointed to actually a fee below $200 for those years, but the government suggested rounding up to $200. And, you know, there are cases even from 2012, if I could point Your Honors to, in which the courts in the Northern District awarded $200 for 2012 attorneys. So here it was incumbent on the — the other side asked for all of their rate, all of their hours to be awarded at one rate. The District Court accepted that approach, but as the law required, applied the historical rate that was most relevant to when 80 percent of the hours were worked here. And — But if we're looking at historical rates with respect to these lawyers and this case, we have evidence in the record as to a fee awards to these lawyers for 2009, which was well above $200. I mean, the district judge goes off to two cases that are not his cases and says $200 flat rate for all the work performed in this case for all the periods up through 2012 for all four lawyers. That strikes me as more than a rounding error. Your Honor, with all due respect here, it's more — it's incumbent on the other side — All due respect is usually a prelude to say I disagree strongly with what you said. So just go ahead and disagree. Here, in this particular case, it was incumbent on the other side to do more than just produce some evidence in the record of what their rates might have been in other years. It was incumbent on them to actually request rates and to make arguments in favor of those rates. And if Your Honors were to find an abusive discretion here, you can imagine the gamesmanship that that would encourage. Plaintiffs could say to themselves, we don't want to provide our historical rates or argue for our historical rates in our fee motions because, A, that will signal to the district court that those rates are something we would accept and — Are you saying that — put to one side what they argued for, because it's very clear that they argued for current rates. I got that. And I'm with you on that point. But is there insufficient evidence in the record that they've put into the record from which to calculate historical rates? Yes, Your Honor. Or let me put it to you this way, Your Honor. Because they did not argue in favor of historical rates and they did not point to that That's not my question. Yeah. My question is, is there insufficient evidence in the record from which to calculate historical rates? Yes. And that is in part because the government did not have the opportunity to respond. And if I can point to that 2009 opinion that they rely on, and that came up, the Miwan case, that was a case from the central district — No, I didn't talk about a 2009 opinion. I talked about in the affidavit — Right. She says, these are the rates I was awarded. Right. Me, in 2009. In a central district case, it was a class action, which this wasn't. It was also a settlement of a class action, so there was no adversarial process about the rates. So it's not clear that that would be the prevailing rate in the northern district for a FOIA case, even in 2009. And the district and the government didn't have the opportunity to argue that because it was not presented as an argument in their — Well, you know, the government rolled the dice, too. Basically, the government's argument was, you get nothing. No, Your Honor. I mean, the government argued for a $200 rate, or to use the rate from 2006 to 2010. Well, I mean, it argued that they weren't entitled to anything under the — That's right. Under the entitlement problem. You're both rolling the dice, as far as I can tell. Well, we made an alternative argument. That's what you get. If both of you roll the dice, then you live with what you get. The issue for me is whether or not this was manifest injustice, because we're here on a 59E, not to really reevaluate what the courts did, but whether or not there is a manifest injustice if the Rule 59E motion were not granted. So what's your response to that? We're here, and that's our standard. So would you address that, please? Sure, Your Honor. And in Carroll v. McIntyre and other cases, this Court has made quite clear that a Rule 59E motion is not the place to raise arguments for the first time and is not permitted to raise arguments that could have been raised earlier but were not. And that is precisely what's happening here. And it is not a manifest injustice for a court to award rates based on the arguments of the parties, and that's what happened here, and based on case law from the district in which the case was decided. And there are, as I said, other cases the district court could have relied on. And that is not a manifest injustice. As Judge Rogers said, you know, it is not — in footnote 2, page 8 of the excerpts of the record — it is not the district court's responsibility to scour the record for alternative arguments. But what do you mean by scour the record? In the moving papers in front of Judge Ware, he is specifically directed to the declarations of the four attorneys who did the work and specifically directed to the declarations of Sobel and Burke. So we're not scouring. He says, here, look at that. But, Your Honor, in order for the judge to have drawn — he would have to draw any number of inferences from that data to conclude that the prevailing rates for different years were whatever plaintiffs now claim them to be. But if the argument had been made, we want current rates, failing that, however, we're willing to have historical rates. And if you're giving us historical rates, look at — and then go to page — it's ER-282, but it's the moving papers in front of Judge Ware — look at the declarations of the four lawyers that did the work, and look at the declaration of Carol Sobel, look at the declaration of Thomas Burke. There you find the information that will allow you to do it. So I don't think he has to scour the record. The problem for them is — and you quite rightly pointed out — is that they don't ask for it. It's not that it's hard to find. It's right there. Right. But they didn't ask for it. Well, the problem is it's only half the story. Because if that argument had been made, then the government would have been able to respond. These historical rates are not really typical of what's given. It's not — the court should not consider these rates for X reason, Y reason. Here are declarations from other people who had similar cases and got $200 an hour. So it's kind of an incomplete record if the court's going to look at it. And that's the difficulty I have with that. What interest does the government have in defending a improperly computed rate? First of all, Your Honor — I mean, beyond gamesmanship. A couple things. First of all, Your Honor, we think the award here was quite generous. It was a $200,000 award. That's not the — that's not the test. It was — look, assume arguendo. It's not assume arguendo. It's clear to us that it was improperly calculated. Well, it's not clear to me. It's not clear to me. All right. Well, it's clear to me that it's improperly calculated. So my question to you is what interest does the United States government have in defending a rate that's improperly calculated? Your Honor, I mean, the government has the same interest that district courts have, and that is in not doing work that — you know, wasting judicial resources, wasting the time of the government to re-argue points that — Okay. If you're a district court judge, you're called on to do things all the time that are, you know, chores or onerous. But that's what you get the big bucks for, to read the papers and reach a correct result, even though the lawyers hadn't helped you as much as you thought they should have. Your Honor, in a case such as this — That's what the whole process is supposed to lead to, it seems to me. Well, Your Honor, I think it also bears emphasis in a case like this one, plaintiff's self-interest was at its absolute zenith. They were asking for their fees. They were seeking their fees, and they made the choice, as Your Honor pointed out, to roll the dice, to seek the greatest possible fee award they could get. And they made no attempt to help the district court in any alternative or propose any alternative. The district court did what it could with what it had. And as Judge Rodgers pointed out, under no obligation, it's certainly not an abuse of discretion, which is the standard here, to go through the record or to develop prevailing rates on his own, I guess go out and find cases on his own. I mean, the logical conclusion to be drawn from what plaintiff's theory is, is that plaintiffs don't even have to request rates to the district court. They can say, district court, here are our hours, here are our billing records, here's 200 pages of randomly selected rates from different cases. It's your job to go through and figure out what the rates are. We're not even going to tell you what our rates are. 200 pages of randomly corrected rates, is that what's in this record? Well, it is a collection organized, you know, it's not organized according to years and years of experience and that sort of thing. I mean, it is evidence of the rates, but in any event, even if it were more, you know, perfectly clearly laid out, again, it's not the district court's responsibility to do that work for the plaintiffs. I take Judge Rollinson's point that the government was not invited to challenge the actual historical rates evidence that's in here, given the nature of the argument that I get, we, the four of us, get current rates. But I have to say that I didn't find the evidence in the record very hard to read. Yes, that's true. But, Your Honor, in order to get from that evidence to the prevailing rates in the Northern District for this type of work, it would require a number of inferences and could have used the guidance from the plaintiffs. So, for example, in Judge Westmore's opinion, 2008 rate that she chooses for Attorney Flynn, she relies on a 2008 billing rate from a Bingham-McCutcheon associate, and this is on page ER 18 or 19. Now, is a Bingham-McCutcheon's billing rate, you know, associate for 2008 representative of the Northern District of California in a FOIA case? Like, who, how, you know, the government had no opportunity to respond to that. You know, how is the district court supposed to go through that and figure out? So, even though there are rates pointed out throughout those declarations, there's a lot of inferences that would have to be drawn, and that's why it's important for plaintiffs to make the necessary arguments and to direct the district court to those arguments so that the government can respond and then we can, through give and take, arrive at the appropriate prevailing rate. And so it is essential for plaintiffs, especially here, where, again, their interest was at its absolute height to point to the, not to just include the evidence in the record that might be relevant or might be helpful, but to actually analyze it and do the analysis and aid the district court in that way. But what's the government, I'm sorry I keep getting stuck on this, but what's the government's interest in an improperly calculated rate? Your Honor, you know, the government, I guess I can't agree that this was an improperly calculated rate. The interest is you have to pay it. Whatever it is, you have to pay it. That's what your interest is. You have to pay it. And also, we don't want to go back and have to do work that we would have done the first time around. I mean, we've already spent, you know, extra time on the Rule 59e motion. We've spent time now on this appeal. There are two district court judges or a magistrate judge and a district court judge who spend time on it. And now the district court judge is going to have to go back and do it all again. And this all could have been avoided if plaintiffs had just made an alternative argument, the argument that they're now making, and that they reserved. And, you know, under this Court's case law, that's why plaintiffs can't raise arguments for the first time. That's one of the reasons. Plaintiffs are not permitted to raise arguments on appeal, even successful ones. First you don't want to give them the documents, and now you don't want to give them the money. I would actually like to talk about that for just one quick second. You did a great job in holding these documents. Well, I would actually. You had seven years to give them up documents? And I'd actually like to address that point. Congratulations. I'd like to address that point quickly, Your Honor. If you go back, plaintiffs requested the rules of engagement from the Army about Iraq and Fallujah while that conflict was going on in 2006. And it should have come as no surprise to them that that information was classified, as Judge Patel found in 2007, and it was not, you know, capable of being distilled. This case was subdued to see for, like, four years? And that was not the government's, you know. The government, you know, filed the motion for summary judgment. And if Judge Patel had ruled in 2008, the information probably wouldn't have been released because it was classified. It was only the passage of time that by 2012 it was no longer classified. So plaintiffs benefited by the passage of time. It wasn't something that worked against them. So you say. At what point did the case move from Judge Patel to Judge Ware? At the fees. So in, you know, in 2012, Judge Patel ruled on the underlying. And then the parties filed motions for reconsideration, and those motions were transferred to Judge Ware. So pretty soon after the 2000. Judge Ware really comes in at the very end of the litigation. Yeah, and he ruled on the motions for reconsideration. In fact, he granted the government's motion for reconsideration as to some of the points that Judge Patel had ruled on in her 2012 order. So he was involved in some of the merits litigation as well as the fees. But in terms of who had sat through the litigation, it had basically been Judge Patel. Yes, that's right, Your Honor. If Your Honor has no further questions. I think we beat you about the head. Thank you. Thanks very much. Judge Rawlinson, I'd like to address your question. You asked about the Rule 59 motion. And Rule 59E motion is treated, as you know, as a motion for reconsideration and may be granted if the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. So we also said that it would be manifestly unjust to not award at all time at the current rates, which was rejected by the magistrate judge. But the magistrate judge was correct that here reconsideration was necessary to correct the manifest errors in the fact that the district court ignored the evidence in the record of the historical rates. What do you do with our precedent, particularly in Marlin Nutraceuticals, where we say that Rule 59E motions may not be used to raise arguments or present evidence for the first time when they could have reasonably been raised early in the litigation? So if the argument you're making now could have been raised earlier, it appears that our precedent says that it's inappropriate to use a Rule 59E motion for that. What's your response? The response is what we were saying in our 59E motion is, look, we're not trying to present any new evidence, and it's completely within the court's ---- They're trying to present a new argument. No. What we were trying to do is say you are completely within your discretion to award fees at historical rates. No problem. But let us point out where the evidence is that you overlooked. Judge Ware ignored the evidence in the record, and this Court has held that ignoring evidence in the record is an abuse of discretion. But the evidence was not presented in conjunction with your argument that you were entitled to historical rates. That's the difficulty I'm having, that the argument has morphed from what you made before the district court, because you didn't say, Judge Ware, here is our evidence for historical rates. If you decide not to give us the prevailing current market rates, here's what we're asking for. That's the argument you're making today. That's not the argument you made before Judge Ware. Correct. We asked for all time at current rates. And the precedent of this Court is when somebody asks for a rate that's excessive or asks for a fee award that's excessive, you send it back down with direction to reset the rates at prevailing market rates. The precedent for this Court also is that you can't use Rule 59E to make an argument that you could have made previously. But we were not trying to make new arguments. We were just trying to point out that the district court erred by ignoring evidence in the record. That was the purpose of the Rule 59E. Well, the linchpin of your argument under 59E that you made both before the magistrate judge and before Judge Rogers was that the award of a flat rate of $200 for all four lawyers for all the years of the work was, by District Judge Ware, an abuse of discretion. If you win that argument, then we can move on. If you lose that argument, you're stuck. And what the magistrate judge did was to buy that argument and say, well, $200 per lawyer for the entire litigation is unreasonable. That was an abuse of discretion. And at that point, the magistrate judge says, well, since I can't rely on that, I've got to look at something else. So the linchpin is do we or do we not agree that it was abuse of discretion for Judge Ware to give $200 as a flat rate for everybody for the entire period? Well, if you follow your own decision in Chowdhury, which you cited, the Camacho case, you would find that, yes, it's an abuse of discretion to set a flat rate for all four attorneys at a below market rate when different rates were requested for each attorney. Yeah, but in Chowdhury, the argument was made a little better than you guys made it, the District Judge. Judges hate to have their earlier decisions cited back to them as a way of controlling what they're going to do in the current case. Okay, thank you. Thank you, both sides. Thank you, both. Payton and Military Law Task Force versus DOD submitted for decision. That completes our argument session, and I would like belatedly to welcome the LLM students from UC Berkeley Bolt Hall School of Law. Welcome, and we're now adjourned.
judges: Parker, W. Fletcher, Rawlinson